IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JULIE ANNE STAMPS,

        Plaintiff,                      Case No.

     v.                                     JURY DEMAND

THE LAMPO GROUP, INC. a/k/a
RAMSEY SOLUTIONS,

        Defendant.
_____/

## COMPLAINT

Defendant The Lampo Group, Inc., a/k/a Ramsey Solutions ("Lampo" or "Ramsey Solutions") is illegally imposing fundamentalist Christian beliefs on its employees. When an employee does not conform to Lampo's rigid religious views, they are shunned, ostracized, and eventually terminated or constructively discharged. Plaintiff, Julie Anne Stamps, worked without issue or complaint for Lampo as a customer care team assistant for close to a year. This abruptly changed when Ms. Stamps decided to share her true self and openly live as a lesbian woman as a Lampo employee. Defendant Lampo denied Ms. Stamps the ability to be an open and active participant in the company once she revealed her homosexual identity, due to their fundamentalist religious belief not recognizing homosexuality. Thus, leaving Ms. Stamps no option but to resign her position. Lampo's actions are discriminatory on the basis of religion and sex, specifically, sexual orientation. Accordingly, Ms. Stamps files the instant Complaint for discrimination and retaliation based on sex and religion in violation of Title VII of the Civil Rights Act of 1964.

## PARTIES

1.     Plaintiff, Julie Anne Stamps, ("Ms. Stamps") is a citizen and resident of

Rutherford County, Tennessee, and a former employee of Defendant. Plaintiff worked for Defendant at its location in Franklin, Tennessee.

2. Defendant The Lampo Group, Inc., ("Lampo") is a limited liability company licensed to transact business in Tennessee. Its registered agent for service of process is Mark Floyd, 1011 Reams Fleming Blvd, Franklin, TN, 37064-1844. At all material times, Defendant has been an employer as defined by Title VII and under state law.

3. At all times material to this action, Defendant has employed 15 or more employees

4. At all times material to this action, Defendant was an employer within the meaning of Title VII of the Civil Rights Act.

## JURISDICTION AND VENUE

5. This is an action for unlawful employment practices brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII").

6. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4). Venue is proper under 28 U.S.C. § 1391.

7. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue and this action was commenced within 90 days of receipt of the EEOC's Notice of Right to Sue.

## FACTS

1. Ramsey is a private for-profit media company that provides advice about personal finance. Ramsey is not a religious institution, church, nor affiliated with any specific church. Founder Dave Ramsey has specifically stated that his business is "not a church and not a cult" yet,

he imposes a mandatory biblically based code of conduct on its employees, irrespective of the employee's personal religious beliefs. [1]

2. Dave Ramsey, further contends with respect to the company's mandatory moral code of conduct, "I've got a right to tell my employees whatever I want to tell them," he said in a Q&A segment about the company code of conduct posted on the company website. "They freaking work for me."

3. Upon information and belief, Ramsey's contention includes justifying discrimination at Ramsey Solutions against employees on the basis of sex, including sexual orientation and religion. In other words, these beliefs are inconsistent with civil rights laws prohibiting discrimination on the basis of a protected class when Dave Ramsey imposes his own personal religious beliefs on the employees of Lampo.

4. It is well-know that the culture at Lampo supports marriage between one man and one woman and does not endorse or support homosexuality or a homosexual lifestyle. In fact, there is no evidence that Lampo has ever hired an openly gay or lesbian person.

5. Founder Dave Ramsey hold himself out as a fundamentalist Christian who subscribes to the viewpoint that homosexuality is a sin. Ramsey's company follows the fundamentalist position that deplores the proliferation of all homosexual practices and reaffirms the position that all such practices are sinful, immoral, and are condemned by the Bible.

6. In furtherance of its policies that are hostile to the LGBTQ community, Dave Ramsey has banned pastors who have expressed support for the LGBTQ community from speaking at weekly, mandatory devotional meetings that Ramsey Solutions' employees are required to attend.

---

[1] "Employees Have to Follow a Moral Code," Blog Post, September 16, 2021, https://www.ramseysolutions.com/business/employees-have-to-follow-the-moral-code.

7. Ramsey Solutions' Company Conduct as set forth in their handbook states, "The image of Ramsey Solutions is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our good will and our brand. If this should occur, the team member would be subject to review, probation, or termination."

8. The righteous living core value states that "We believe that character matters. All the time" and "Who you are is far more important than what you do. We aren't perfect, but we want to get better. No cheating, stealing or lying. Goal # 1 is to be men and women of integrity."

9. Ms. Stamps was hired as a Team Assistant for the Lampo customer care team in July 2019 and transitioned to the role of Assistant to the Director of Customer Care in January 2020.

10. When Ms. Stamps was hired, she was married to a cis-gendered male and was engaged in a heterosexual lifestyle.

11. Throughout her eleven months at Lampo, Ms. Stamps performed exceptionally. She enjoyed her role and became close with her colleagues and supervisor, Melissa Wilhoite.

12. In the Spring of 2020, Ms. Stamps began to come to terms with her sexuality. In particular, that she had struggled with her sexuality since she was in middle school and that she was ready to live her life in a more open and honest way. Thus, she came to terms that her sexual orientation was not that of a cis-gendered heterosexual, but that she was gay.

13. As a result, Ms. Stamps and her husband's marriage began to decline. They decided to divorce in May of 2020.

14. Throughout her employment at Lampo, Ms. Stamps was encouraged to share her personal life with and seek advice from her supervisor Ms. Wilhoite. During the turbulent time of

her marriage ending, Ms. Stamps kept Ms. Wilhoite apprised of the situation and her homelife struggles.

15. In mid-May 2020, Ms. Stamps told Ms. Wilhoite that she is a lesbian and that her sexuality was a main contributor to her decision to divorce her husband.

16. Ms. Wilhoite responded that Ms. Stamps should pray about it and asked if Ms. Stamps was seeing any type of Christian counselor. Ms. Wilhoite recommended a Christian counselor to Ms. Stamps that Ms. Wilhoite knew had "saved" another person who had expressed a homosexual sexuality.

17. After coming out to her family as a homosexual woman in the beginning of June 2020, Ms. Stamps approached Ms. Wilhoite about the possibility of coming out as a lesbian to the Lampo office. Ms. Stamps feared that her sexuality would be prohibited by Lampo, because it imposes its version of Christianity and "Judeo-Christian" values on its employees, in part as set forth in its "righteous living" core value.

18. Upon information and belief, the imposition of so- called "Judeo-Christian" values, is typically just a selective interpretation of the Bible as a means impose rigid behavioral rules and expectations on people, or in this case, employees of a for-profit company.

19. Ms. Stamps asked Ms. Wilhoite what would happen to her employment if she told her colleagues that she is a lesbian. Ms. Wilhoite responded by saying that Ms. Stamps needed to choose whether she wanted to remain employed at Lampo or not.

20. Confused, Ms. Stamps assured Ms. Wilhoite she did not want to leave her job. After Ms. Wilhoite failed to give more specifics, Ms. Stamps asked outright if she would be allowed to bring a same-sex partner to the company holiday party. Ms. Wilhoite responded no.

21. Ms. Stamps further asked whether she would be allowed to bring a same-sex partner

onto the Lampo campus. Ms. Wilhoite responded no. Ms. Wilhoite went on to say that Ms. Stamps would not be able to tell anyone she was a lesbian or post on social media about her sexuality if she remained a Lampo employee.

22. This direction from her supervisor that Ms. Stamps could not tell anyone of her homosexuality, and in fact would actively need to hide her sexuality led Ms. Stamps to believe that in order for her to stay within its employment, she would have to remain in the closet and refrain from sharing her true sexuality in the workplace.

23. Hiding and lying about her sexuality would be a violation of Ramsey's "Righteous Living" core value which condemns dishonesty and applauds integrity.

24. Rather than continue to live a life in secret, Ms. Stamps told her supervisor she was going to come out about her sexuality. In response, Ms. Stamps' supervisor informed her that she had to give two weeks' notice of her intent to resign and that an exit interview would be scheduled.

25. Ms. Stamps informed Lampo that she would be resigning and mutually discussed with Human Resources that her last day of employment would be June 19, 2020. The Human Resources Department scheduled an Exit Interview for Ms. Stamps on June 19, 2020.

26. Ms. Stamps does not share Lampo's belief, as expressed by her supervisor, that homosexuality is inconsistent with her faith or a sin. To the contrary, her honestly held Christian belief is that living a whole and honest life is consistent with her faith and that it is not man's nor the church's place, and certainly not her employer's place, to judge her personal relationship with God. Ms. Stamps believes that one's faith is deeply personal and her own and that she can openly live out her faith and indeed, the way God made her, in an authentic and open way at a time and place of her choosing. Moreover, she believes that God reveals different things at different times, even through the Bible, and her fundamental truth is to live authentically and love one another

without judgment. But, at any rate, she does not believe her personal faith should be a basis for discrimination in the workplace because it is a deeply personal calling and relationship.

27. On June 15, 2020, the United States Supreme Court published its opinion in *Bostock v. Clayton County*, which held that discrimination based on homosexuality was discrimination "because of sex" and was prohibited by Title VII of the Civil Rights Act of 1964.

28. Mid-morning on June 15, 2020, after the *Bostock* opinion had been covered in the news, Ms. Stamps was informed that her exit interview and last day as a Ramsey employee was moved forward to the morning of June 17, 2020, and she was terminated and told that Ramsey did not agree "with that lifestyle." After her morning exit interview, Ms. Stamps was escorted off the Lampo premises.

**Count I**

**Violation of Title VII of the Civil Rights Act – Sex Discrimination/Retaliation**
**(Disparate Impact and Disparate Treatment)**

29. Plaintiff restates and incorporates herein the foregoing paragraphs.

30. Plaintiff was subjected to disparate treatment in the terms and conditions in the Defendant's workplace because of her sexual orientation.

31. Defendant's policies have a disparate impact on LGBTQ employees which essentially requires them to be untruthful and stay closeted if they wish to remain employed.

32. Plaintiff was subjected to disparate terms and conditions of employment that other similarly situated heterosexual employees were not subject to. In particular, she was told she would not be allowed to be her true self at work, she would not be able to attend company events with a partner, girlfriend or spouse of the same sex, she would not be allowed to post on social media about her partner, girlfriend or spouse of the same sex, and that she would be subject to termination if she did not comply with these rules. Heterosexual couples are not subject to similar restrictions.

7

33. Plaintiff was qualified for her position.

34. Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sexual orientation, including, but not limited to different terms and conditions of employment and as a result, and she was terminated and/or constructively discharged from her employment.

35. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, personal and professional embarrassment, humiliation, inconvenience, lost earnings, benefits and actual costs incurred as a result of her loss of employment.

36. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### Count II
### Violation of Title VII- Religious Discrimination/Failure to Accommodate/Retaliation
### (Disparate Impact and Disparate Treatment)

37. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

38. Plaintiff is a Christian. Her practice and belief of Christianity is that Christianity is a personal relationship with God that is not to be dictated by others and that it is above all a loving, inclusive, not punitive and judgmental faith. Her practice of Christianity differs from Defendant.

39. Plaintiff requested an accommodation from Defendant's fundamentalist religious morality code. In particular, that she be allowed to practice her Christian faith as she believes it to be, which is personal, non-judgmental and loving, as such she merely wanted to be treated in the same non-discriminatory manner as a heterosexual/cis-gender person in the workplace. She was

informed this would not be possible and that she would need to remain to closeted and refrain from any public disclosure of her sexuality to remain employed.

40. Plaintiff engaged in protected conduct when she notified her supervisor that she was homosexual and asked whether her homosexuality was permissible at Ramsey Solutions and whether she would be allowed to participate in company activities like all other employees.

41. Defendant discharged Plaintiff's employment by creating an intolerable working condition of requiring her to hide and lie about her sexual orientation. Based on Defendant's "Core Values" which incorporate a "righteous living" value allegedly premised on its interpretation of "Judeo-Christian" values that it believes prohibits and condemns homosexuality.

42. Defendant constructively discharged Plaintiff's employment because of its fundamentalist Christian, religious-based Core Value policy which discriminates against employees who do not strictly adhere to Ramsey's interpretation of "Judeo-Christian" values for nonwork-related behavior which includes sexuality.

43. Plaintiff does not adhere to Ramsey's interpretation of "Judeo-Christian" values for nonwork-related behavior nor its interpretation that homosexuality is amoral and should be condemned.

44. Defendant discriminated against and retaliated against Plaintiff when it was terminated and/or constructively discharged her for having different religious beliefs than what Ramsey imposes on its employees.

45. Allowing a religious accommodation in the form of an exception to Ramsey's righteous living policy which purports to condemn homosexuality would not have imposed any sort of undue hardship on Ramsey.

46. Defendant's Righteous Living policy has a discriminatory impact on employees

like Plaintiff who do not share the same rigid religious beliefs as Ramsey seeks to impose on its employees.

47. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, lost earnings, benefits and actual costs incurred as a result of her loss of employment..

48. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory damages, punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, cost of replacement medical coverage or reimbursement for medical expenses, and any other legal and equitable relief to which she may be entitled.

**RELIEF REQUESTED**

Plaintiff respectfully requests:

1. A jury trial;

2. Judgment in favor of Plaintiff and against Defendant on all counts in this action;

3. Back pay and damages for lost benefits;

4. Reinstatement or front pay;

5. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

6. Punitive damages;

7. Attorneys' fees and expenses;

8. Prejudgment interest and, if applicable, post-judgment interest; and

9. Such other and further legal or equitable relief to which he may be entitled.

Respectfully submitted,

      /s *Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*